THE HIPPODROME CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7354, 21529.   Promulgated February 24, 1928.

*Ralph W. Smith, Esq.*, for the petitioner.
*Brice Toole, Esq.*, for the respondent.

1012

VAN FOSSAN: The only questions for our determination are the value of the leasehold at the time it was acquired by the corporation in exchange for stock and the amount, if any, which should be allowed as a deduction representing the yearly exhaustion of such leasehold value.

In support of its contention that the lease had a bonus value of approximately $100,000, petitioner relies chiefly on the opinion testimony of two witnesses, Ramish and Gore. Ramish built the theatre and leased it on March 28, 1913, to Cohn, trustee, and assignor of petitioner. At that time he was, according to his own testimony, familiar with the theatrical line, purchasing and leasing theatres, and well versed in the per seat value of theatres. Fortified by such experience and knowledge he leased at a figure of $1,650 per month, plus a cash bonus of $11,000. This lease presumably represented Ramish's best judgment at the time of the value of the property, and, in our opinion, is of greater weight than his present opinion, fourteen years later. It is always difficult to disregard the knowledge one has gleaned from subsequent history and form an accurate *nunc pro tunc* judgment of value. In the present case the difficulty is especially pronounced. The success of a theatre depends not alone on location and physical equipment, but perhaps even more on management. A fine theatre building may fail utterly if the management is poor and the character of its attractions does not appeal to the patrons' taste, while good management and a continued policy of high-type attractions may make a great financial success of a mediocre theatre property. That this theatre was successful is shown by its yearly earnings. But how much, if any, of this is due to the lease of the building and how much to successful management is difficult to tell.

The stockholders of petitioner in 1913 were men of wide theatrical experience and valuable business connections. Ackerman, Harris, and Brown were the owners of a chain of theatres and had their own booking agency. Petitioner's witness admitted such a situation to be of considerable advantage and that petitioner's stock would be more valuable because of the connection of these men with the enterprise. Herein we see an explanation of the price Ramish was willing to pay for 50 per cent of petitioner's stock two months after he leased the property. Here also we see the fallacy of the contention that the sale price of the stock is the proper measure of the value of the lease. The lease was one thing, the stock was another and totally different thing. The lease provided only a building while petitioner's organization provided an experienced management with all the advantage of circuit booking. In this case there appears to be no controlling relation between the price of

the stock and the value of the lease. When Ramish bought 50 per cent of the stock he bought an interest in the experienced management provided by petitioner's organization.

The observations we have made as to Ramish apply also to Gore, whose testimony was largely in answer to hypothetical questions based on the rental per seat of theatre property. In such a situation a general market price per seat, standing alone, is not, in our judgment, sufficient to establish the value of a lease or to overcome the effect of the actual leasing of the property in an arm's length transaction by an owner who had full knowledge of theatre values.

For reasons indicated above we can give little weight to the record of subsequent earnings.

After a careful consideration of all the evidence we are of the opinion that petitioner has not established that the lease had any bonus value when transferred to the corporation for stock. The action of the respondent is approved.

*Judgment will be entered for the respondent.*